

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-25-00367-CR
_____

CATHERINE LYNN JARVEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 78th District Court
Wichita County, Texas[1]
Trial Court No. DC89-CR2024-1147-1, Honorable Meredith Kennedy, Presiding

July 29, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and YARBROUGH and PRATT, JJ.

A jury convicted Appellant, Catherine Lynn Jarvey, of intentionally or knowingly causing injury to a child, a first-degree felony, and assessed a sentence of 65 years'

_____

[1] Originally appealed to the Second Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket-equalization efforts. *See* TEX. GOV'T CODE § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

imprisonment and a $10,000 fine.[2]  In one issue, Appellant argues that the evidence is insufficient to support her conviction.  We affirm.

## BACKGROUND

In September of 2022, a pest control technician was working at the Delux Inn in Wichita Falls.  An occupant of Room 124 granted him entry.  The technician found the room to be in "atrocious" condition, with so much trash and debris that he could barely walk around.  As he sprayed, he noticed what he thought was "a skeleton for a Halloween decoration."  However, he soon realized that it was not a skeleton, but a child.  The child was curled in a playpen, wearing only a diaper.  Alarmed and recognizing that the child needed help, the technician quickly left the room and contacted his employer.  The Wichita Falls Police Department was called and performed a welfare check at the motel.  Responding officers were concerned by the child's "very thin," "very unhealthy," and skeletal appearance.

Tracy Anderson, an investigator for the Department of Family and Protective Services, was called to the scene.  Anderson had previously interacted with the family and knew that the child, "Isaac,"[3] had been born with complex medical conditions, including alobar holoprosencephaly, hydrocephalus, congenital scoliosis, cerebral palsy, and developmental delays.  As an infant, Isaac was hospitalized, then sent to inpatient care at a hospice facility.  He later went home and received hospice home care for two years, after which time he was cared for solely by Appellant, his mother.  Appellant

---

[2] *See* TEX. PENAL CODE § 22.04(a)(1).

[3] We use a pseudonym to protect the identity of the child.  *See* TEX. R. APP. P. 9.10(a)(3).

received training on how to properly care for Isaac, who was non-ambulatory and dependent on a gastronomy feeding tube. When Anderson arrived at the motel, Appellant was holding Isaac. Anderson observed that Isaac was pale, emaciated, and "just wouldn't move." She could see Isaac's entire ribcage and all of his veins through his skin. Because Isaac was so thin, Anderson could also see "the whole shunt" that had been placed in Isaac when he was a baby. Isaac appeared to Anderson to be "maybe three" years old, but he was six. Anderson's familiarity with Isaac's medical history did not diminish her concerns about his condition. She testified that in her twenty-five years with the Department, this was "the worst starvation case" she had ever worked. Isaac was unable to cry or move his head. Appellant revealed to Anderson that Isaac had not been seen by a medical professional in more than three years. Anderson concluded that Isaac was malnourished and not being cared for, so she arranged for him to be taken to the local hospital.

When he arrived at the hospital, six-year-old Isaac weighed just 15 pounds. He was treated for hypothermia and fed through his G-tube, then transported to Cook Children's Medical Center in Fort Worth for more advanced care. He stayed at Cook's for several weeks. Meanwhile, the Department conducted an investigation, made findings of medical neglect and neglectful supervision against Appellant, and removed Isaac from Appellant's care. When Isaac was discharged from Cook's, he was placed in a medical needs foster home.

Isaac's foster mother accepted placement of him in October of 2022. She likened his appearance to that of a Holocaust survivor. Isaac lived with her for almost two years. In the care of his foster family, Isaac's condition improved and he steadily gained weight:

he weighed 25 pounds by December of 2022 and 30 pounds the following January. In April of 2023, he weighed 39 pounds, was on the growth chart again, and was no longer considered a failure to thrive case. Isaac's foster mother took him to school, coordinated his medical care, and got him "to a place where he was at a maintenance level with his conditions." Isaac was eventually adopted by another family.[4]

As set forth above, Appellant was charged with injury to a child and convicted. She was also charged with exploitation of a child, for which the jury found her not guilty.

## ANALYSIS

Appellant presents a single issue on appeal, challenging the sufficiency of the evidence supporting her conviction. The State was required to prove that Appellant intentionally or knowingly caused serious bodily injury to Isaac by omission, through failing to provide adequate nutrition, hydration, or medical care. *See* TEX. PENAL CODE § 22.04(a)(1), (c)(1), (e). Appellant argues that (1) there is insufficient evidence that she acted with a culpable mental state, (2) the State failed to prove that Isaac suffered a serious bodily injury, and (3) the evidence on causation fails, given the profound nature of Isaac's birth conditions.

## Standard of Review

We review Appellant's sufficiency challenge under the standard enunciated in *Jackson v. Virginia*, 443 U.S.307, 318–20, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, we

---

[4] Isaac's birth father relinquished his parental rights.

4

must determine whether, considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. We defer to the jury's determinations regarding the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 901.

Culpable Mental State

In her first sufficiency issue, Appellant argues there is insufficient evidence that Isaac's malnutrition, dehydration, and lack of medical treatment resulted from her conscious objective or desire to cause serious bodily injury to Isaac, or that she was consciously aware that her failures were reasonably certain to cause such injury. Appellant acknowledges that Isaac "was not healthy and needed medical intervention," but asserts that the State did not meet its burden to establish that she "knew" or caused any "result."

Appellant was charged with "intentionally or knowingly" committing the offense. A person acts "intentionally or with intent with respect to . . . a result of [her] conduct when it is [her] conscious objective or desire to . . . cause the result." TEX. PENAL CODE § 6.03(a). A person acts "knowingly or with knowledge with respect to a result of [her] conduct when [she] is aware that [her] conduct is reasonably certain to cause the result." *Id.* § 6.03(b).

When a defendant is charged with injuring a child by omission, as Appellant was here, the evidence is sufficient to support a conviction if the State proves either that a defendant intended to cause the injury through her omission or that she was aware that

5

her omission was reasonably certain to cause injury. *Johnston v. State*, 150 S.W.3d 630, 636 (Tex. App.—Austin 2004, no pet.). Intent and knowledge are fact questions and are almost always proven through circumstantial evidence. *Clay v. State*, 390 S.W.3d 1, 8 (Tex. App.—Texarkana 2012, pet. ref'd). A jury may infer knowledge or intent from any facts that tend to prove the existence of the mental states, including the defendant's acts, words, or conduct and the circumstances surrounding the acts engaged in by the defendant. *Turner v. State*, 600 S.W.2d 927, 929 (Tex. Crim. App. 1980). Knowledge that failure to obtain medical care is substantially certain to result in serious bodily injury can be inferred from the circumstances apparent to the defendant, including the child's condition and appearance. *See Proenza v. State*, 471 S.W.3d 35, 46 (Tex. App.—Corpus Christi 2015), aff'd in part and remanded, 541 S.W.3d 786 (Tex. Crim. App. 2017) (evidence sufficient to support finding defendant knowingly caused child's death by omission by failing to feed and failing to seek medical care where baby had been losing weight, appeared malnourished, and defendant acknowledged baby had been vomiting); *Baldwin v. State*, 264 S.W.3d 237, 243 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (defendant's failure to obtain medical care or provide adequate nourishment in light of child's obviously malnourished condition was sufficient to support reasonable inference that defendant consciously desired or was aware that her conduct was reasonably certain to cause serious bodily injury). Moreover, a jury is "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence." *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

6

Several witnesses testified to Isaac's observably frail and emaciated condition at the time of his hospitalization in September of 2022. Photographs of Isaac at the time were admitted into evidence, and they show an extremely thin child with no muscle development, curled into a contracted fetal position. The evidence also indicated that Isaac had not been fed adequately and that Appellant did not seek medical treatment for him. Frank Cook, a nurse who treated Isaac at the hospital in Wichita Falls, testified that the hospital staff experienced "quite a bit of shock" at Isaac's appearance. Cook described Isaac as "frail, emaciated, cold," and "scared." He stated, "You could tell it had been a while since [Isaac] had any care." Cook testified that Isaac's stomach was checked for residual contents, but nothing came up, indicating he had not been fed recently. Cook stated that Isaac's condition would "definitely not" be caused by just one missed feeding.

Kasey Robertson, a nurse practitioner, also treated Isaac at the emergency department in Wichita Falls. She said his condition was "pretty shocking" and described him as "the thinnest human being I have ever seen in my life." She could see all of Isaac's ribs and all of his spine through his skin. Robertson recognized that Isaac would need to receive hospital care for a while. She testified that he was "exceedingly skinny, just very, very thin, frail looking, [and] pale," and that "anybody," not just health care workers, would be able to tell that he was not healthy. Both Cook and Robertson testified that Isaac had hypothermia, which was an indication of his malnutrition.

Anderson, who accompanied Appellant and Isaac to the hospital, testified that a nurse asked them for Isaac's formula. Anderson returned with Appellant to the motel to retrieve formula. She testified that Appellant "had to find" Isaac's feeding supplies by

digging through and climbing over items in the cluttered room; the feeding machine, tubing, and formula were not readily available. Appellant opened a case of formula, and they took a can back to the hospital. The formula was not usable because it had expired. An investigator later searched the motel room for opened or used cans of formula, but did not find any.

Dr. Elizabeth Peeler, a pediatrician who treated Isaac at Cook's, testified that Isaac presented one of the worst cases of neglect she had ever seen. She was initially concerned that he would not survive. The "vast physical improvements" Isaac made in the hospital were largely due to proper nutrition. Dr. Peeler noted that when Isaac last saw a medical provider in 2019, he weighed 21 pounds, compared to the 15 pounds he weighed in 2022. There was evidence that Isaac had been gaining weight when he was under a physician's care. Appellant told Dr. Peeler that she regularly fed Isaac, but Dr. Peeler concluded this was "not possible" based on Isaac's condition. She said this case involved "chronic malnutrition long term," which landed Isaac below the first percentile on the growth chart. Dr. Peeler made findings of severe malnutrition, failure to thrive, and medical neglect, which she explained means "not attending and following through with basic medical recommendations that result in harm to the patient or the child."

Detective Andrea Young, who began the criminal investigation, testified that she interviewed Appellant in connection with the investigation. Videos of the interviews were played for the jury. Appellant acknowledged that Isaac needed to be under a doctor's care and that he required more medical care than a typical child. She also conceded that she noticed Isaac was not gaining weight and she had become concerned. Appellant stated that taking Isaac to a doctor was on her "to-do" list and she agreed that more

should be done for him.  However, she claimed doctors would not see him because of his complex conditions.[5]

The testimony and medical evidence established that Isaac was obviously emaciated.  Appellant recognized that he needed medical care.  Reviewing the evidence in the light most favorable to the verdict, we conclude a rational jury could have reasonably inferred Appellant was aware of Isaac's malnourishment and his need for medical attention, and that her failure to provide them would be reasonably certain to cause injury.  *See Proenza*, 471 S.W.3d at 46; *Baldwin*, 264 S.W.3d at 243; *see also Guerrero v. State*, No. 04-15-00762-CR, 2016 Tex. App. LEXIS 9632, at *25–26 (Tex. App.—San Antonio Aug. 31, 2016, no pet.) (mem. op.) (circumstantial evidence sufficient to prove intentional or knowing omission that caused serious bodily injury to child by malnourishment).

Causation of Serious Bodily Injury

In her second and third sufficiency issues, Appellant asserts there is insufficient evidence that Isaac suffered serious bodily injury and that she caused such injury. Appellant posits that malnutrition, dehydration, and lack of medical care *could* cause serious bodily injury, but the State did not establish that they actually caused serious bodily injury to Isaac, who was already suffering from complex medical conditions.

"Serious bodily injury" includes bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment

---

[5] This assertion was disputed by more than one witness, including the pediatrician who treated Isaac in October of 2019.

9

of the function of any bodily member or organ.  TEX. PENAL CODE § 1.07(a)(46).  "Whether an injury constitutes serious bodily injury is determined on a case-by-case basis."  *Wade v. State*, 663 S.W.3d 175, 184 (Tex. Crim. App. 2022).  Further, serious bodily injury may be established without a physician's testimony when the injury and its effects are obvious. *Carter v. State*, 678 S.W.2d 155, 157 (Tex. App.—Beaumont 1984, no pet.).

There is ample evidence in the record to support the inference that Isaac's condition constituted a serious bodily injury and that Appellant caused it.  Isaac was severely malnourished and dehydrated.  Medical providers testified to the gravity of his condition and to its detrimental effects, including stunted growth, compromised organ function, and impaired cognitive function.  Moreover, Dr. Peeler testified that Isaac was suffering from refeeding syndrome when he was hospitalized.  She explained that refeeding syndrome is a dangerous condition that can develop in someone who is severely malnourished.  Dr. Peeler testified that people with refeeding syndrome have been starved for so long, their bodies have trouble processing food.  When food is reintroduced to their system, they can become sicker.  They are at risk of "severe complications such as cardiac arrhythmias and even death."  Dr. Peeler testified that Isaac required blood draws "around the clock" when he was in the Intensive Care Unit to ensure that nutrients were safely and gradually reintroduced.  Thus, there was sufficient evidence that Isaac's starvation and refeeding syndrome constituted serious bodily injury.

The jury also heard evidence that Isaac's emaciated state was caused by inadequate nutrition, not his underlying conditions.  Dr. Peeler stated that Isaac's "medical neglect and physical neglect resulted in severe malnutrition and refeeding syndrome, which was life[-]threatening."  She testified that Isaac improved and was able to gain

weight "simply by obtaining proper nutrition . . . ." Isaac's foster mother also testified that his malnourishment resolved with proper care.

Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could reasonably have found that Appellant put Isaac at substantial risk of death when she failed to provide adequate nourishment or medical care. *See, e.g., Estrella v. State*, 546 S.W.3d 789, 797–98 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (evidence supported guilty verdict of injury to child by omission when child was chronically malnourished); *Guerrero*, 2016 Tex. App. LEXIS 9632, at *22–23 (evidence supported guilty verdict when mother did not seek medical treatment for child's malnourished and weakened condition). The evidence was sufficient to establish the essential elements of serious bodily injury to a child by omission beyond a reasonable doubt. We overrule Appellant's second and third issues.

### CONCLUSION

Having overruled Appellant's issues on appeal, we affirm the trial court's judgment.

Judy C. Parker
Chief Justice

Do not publish.

11